IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

MARK A. NIXON,                    )
                                  )
            Plaintiff,            )
                                  )
    v.                            )      1:11CV722
                                  )
CAROLYN W. COLVIN,                )
Acting Commissioner of Social     )
Security,[1]                      )
                                  )
            Defendant.            )


## MEMORANDUM OPINION AND ORDER

**OSTEEN, JR., District Judge**

This cause comes before the court on cross-motions for
judgment on the pleadings regarding a determination that
Plaintiff was not disabled under the Social Security Act for
purposes of disability insurance benefits or supplemental
security income.  For the reasons set forth below, the court
will grant Defendant's motion for judgment on the pleadings
(Doc. 14) and deny Plaintiff's motion for judgment on the
pleadings (Doc. 12).

---

[1] Carolyn W. Colvin became the Acting Commissioner of
Social Security on February 14, 2013.  Pursuant to Rule 25(d) of
the Federal Rules of Civil Procedure, Carolyn W. Colvin should
be substituted for Michael J. Astrue as the Defendant in this
suit.  No further action need be taken to continue this suit by
reason of the last sentence of section 205(g) of the Social
Security Act, 42 U.S.C. § 405(g).

## I.   BACKGROUND

Plaintiff protectively filed applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"), alleging a disability onset date of July 14, 2006. (Tr. at 46, 108-16.)  After his claims were denied initially (Tr. at 60-64) and upon reconsideration (Tr. at 69-75), Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which took place on April 17, 2009 (Tr. at 12-38, 46). The ALJ ultimately found that Plaintiff was not under a disability from the date of his application through the date of the decision.  Specifically, the ALJ found that Plaintiff had two severe impairments - coronary artery disease with ischemic cardiomyopathy and degenerative disc disease of the lumbar spine - and retained the residual functional capacity ("RFC") to perform the full range of sedentary work.  (Tr. at 48-52.)  The ALJ then applied the Medical-Vocational Guidelines ("the grids") in conjunction with Plaintiff's RFC, age, education, and work experience, and determined that the grids directed a finding of "not disabled."  (Tr. at 55-56.) After unsuccessfully seeking review by the Appeals Council (Tr. at 57-59), Plaintiff filed the present action in this court.

## II. **ANALYSIS**

A court's scope of judicial review is limited to determining whether the Social Security Commissioner's decision as a whole is supported by substantial evidence and whether the Commissioner employed the correct legal standard.[2] Richardson v. Perales, 402 U.S. 389, 401 (1971); see 42 U.S.C. §§ 405(g) and 1383(c)(3). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005).

Plaintiff argues that the ALJ erred in (1) evaluating Plaintiff's credibility and medical records, and (2) failing to assign "appropriate weight" to the opinion of Dr. Behzad Taghizadeh, one of Plaintiff's treating cardiologists.

### A. **Credibility**

Plaintiff first contends that the ALJ failed to properly assess his allegations of disabling back pain, anxiety, and cardiac symptoms. This analysis proceeds under the framework set out in Craig v. Chater, 76 F.3d 585, 594-95 (4th Cir. 1996). Craig provides a two-part test for evaluating a claimant's statements about symptoms. "First, there must be objective

---

[2] The ALJ's decision is the final decision of the Commissioner in this case. (Tr. at 57.)

medical evidence showing 'the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged.'" Id. at 594 (citing 20 C.F.R. §§ 416.929(b) and 404.1529(b)). If the ALJ determines that such an impairment exists, the second part of the test then requires him to consider all of the available evidence, including Plaintiff's statements about his pain or other symptoms, in order to evaluate the intensity and persistence of those symptoms, and to determine the extent to which they affect his ability to work. Craig, 76 F.3d at 595-96.

Notably, while the ALJ must consider Plaintiff's statements and other subjective evidence at step two, he need not credit them "to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges [he] suffers." Id. This approach facilitates the ALJ's ultimate goal, which is to accurately determine the extent to which Plaintiff's pain or other symptoms limit his ability to perform basic work activities. Thus, a plaintiff's "symptoms,

including pain, will be determined to diminish [his] capacity

for basic work activities to the extent that [his] alleged

functional limitations and restrictions due to symptoms, such as

pain, can reasonably be accepted as consistent with the

objective medical evidence and other evidence." 20 C.F.R.

§§ 404.1529(c)(4) and 416.929(c)(4).  Relevant evidence for this

inquiry includes Plaintiff's "medical history, medical signs,

and laboratory findings," Craig, 76 F.3d at 595, as well as the

following factors set out in 20 C.F.R. §§ 404.1529(c)(3) and

416.929(c)(3):

> (i) [Plaintiff's] daily activities;
>
> (ii) The location, duration, frequency, and intensity of [Plaintiff's] pain or other symptoms;
>
> (iii) Precipitating and aggravating factors;
>
> (iv) The type, dosage, effectiveness, and side effects of any medication [Plaintiff] take[s] or [has] taken to alleviate [his] pain or other symptoms;
>
> (v) Treatment, other than medication, [Plaintiff] receive[s] or [has] received for relief of [his] pain or other symptoms;
>
> (vi) Any measures [Plaintiff] use[s] or [has] used to relieve [his] pain or other symptoms (e.g., lying flat on [his] back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and
>
> (vii) Other factors concerning [Plaintiff's] functional limitations and restrictions due to pain or other symptoms.

The ALJ considered these factors and heard Plaintiff's testimony and observed his demeanor. Because the ALJ had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations on these issues is entitled to great weight. See Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984). Accordingly, the Court "will reverse an ALJ's credibility determination only if the [plaintiff] can show it was 'patently wrong.'" Powers v. Apfel, 207 F.3d 431, 435 (7th Cir. 2000).

### (1) Cardiac Impairment

In the present case, Plaintiff first contends that the ALJ erred in finding his cardiac complaints less than credible. Contrary to this assertion, a review of the decision reveals that the ALJ found Plaintiff's complaints of fatigue, weakness, and occasional shortness of breath and chest pain consistent with his severe impairment of coronary artery disease with ischemic cardiomyopathy. (Tr. at 52-54.) However, Plaintiff never testified or otherwise suggested that his cardiac symptoms alone would prevent him from performing the sedentary work

identified in the RFC assessment.[3]  (Tr. at 20, 52-53.)  Rather,

both Plaintiff and his attorney argued that Plaintiff's alleged

disability results from a combination of impairments, with his

back and mental impairments preventing sedentary work and his

cardiac impairment preventing work at all higher exertional

levels.  (Tr. at 16-38.)  Because, for the reasons discussed

below, the ALJ found Plaintiff's further complaints of back pain

and anxiety less than credible, substantial evidence supports

the RFC assessment for sedentary work.

---

[3] Plaintiff argues in briefing that: "The ALJ hangs his
entire credibility attack on a single allegation that is not
true: that [Plaintiff's] heart condition was not significantly
limiting."  (Pl.'s Mem. in Supp. of Mot. for J. on the Pleadings
("Pl.'s Br.") (Doc. 13) at 4.)  The ALJ did not make this
blanket determination but found that it did not preclude
sedentary work.  (Tr. at 55-56.)  Further, at the hearing, the
ALJ questioned Plaintiff with respect to the medical records and
his heart condition: "They [the records] almost always say you
have some symptoms on exertion, if they say anything.  So what
I'm wondering is, what would be the problem with a sedentary
job, sit down, no heavy lifting?"  (Tr. at 20.)  Plaintiff
responded by saying: "My back, it just – my back hurts when I
sit.  I have these anxiety attacks . . . ."  (Id.)  Plaintiff,
in response to his attorney's questioning, stated that his chest
pain occurred when he was not exerting himself, explaining "I
have two youngins and anything can get me tore up and I just
start hurting."  (Tr. at 21.)  Plaintiff's testimony is not
entirely clear, but it appears he related chest pains at rest to
his anxiety about his heart condition.  (Tr. at 22-23.)  In any
event, the ALJ considered Plaintiff's significant heart problem
and addressed it in terms of the entire record.  (See Tr. at 48-
55.)

### (2) Back Impairment

Plaintiff next argues that his further limitations from
back pain and anxiety would preclude this sedentary work.  In
particular, Plaintiff testified that his back pain limits his
ability to stand, walk, sleep, drive, and ride long distances.
(Tr. at 31-33, 53.)  He also described pain shooting down his
left leg when he sits and difficulty rising after sitting for
long periods. (Tr. at 20, 32-33, 53.)  After considering this
testimony along with the relevant medical evidence, the ALJ
found that Plaintiff's "statements concerning the intensity,
persistence and limiting effects" of his back pain were not
credible to the extent they precluded sedentary work. (Tr. at
53.)

Plaintiff now contends that the ALJ's credibility finding
was not supported by substantial evidence and, accordingly, that
his "testimony must be taken as true (as it should have been
given its confirmation in the medical record)."  (Pl.'s Br.
(Doc. 13) at 6-7.)  However, Plaintiff points to nothing in the
medical record to support this assertion.  Instead, the
available evidence – which the ALJ recounts at great length –
shows that Plaintiff underwent a lumbar discectomy in March
2000, but was able to return to his regular, medium exertion

level work three months later.  (Tr. at 50, 55, 468-69.)  He then entered a period of over eight years – during which he worked for six years – with no medical evidence of back pain. Moreover, Plaintiff did not allege a back impairment on his disability applications and first mentioned it as a basis for disability at his hearing.  (See Tr. at 144.)

At that time, Plaintiff indicated that his more recent back complaints were a continuation of his pre-surgical condition, rather than a new injury.  (Tr. at 17-19.) On December 1, 2008, Plaintiff returned to Dr. Harlan B. Daubert, who had performed his back surgery, for the first time since 2000, complaining of pain in his lower back and left leg.  As accurately recounted in the decision, Dr. Daubert found as follows:

> On examination, the claimant had a positive straight leg raise on the left. . . .  He had normal alignment of the cervical, thoracic and lumbosacral spine.  He had full range of motion of the hips, knees and ankles.  Strength was 5/5 or normal.  He had normal reflexes.  The impression was:  left leg radiculopathy.  A lumbar myelogram and CT scan on December 15, 2008 showed degenerative changes at L4-L5 represented by minimal retrolisthesis mild disc bulge with tiny inferior migrating central disc extrusion as well as facet hypertrophy, right greater than left. There was some narrowing of the right lateral recess with mild mass effect on the traversing right L5 root sleeve.  There was also moderate right foraminal stenosis.  No clear etiology for the claimant's left-sided symptoms was appreciated.  Dr. Daubert noted on March 17, 2009 that the claimant's studies failed to

> demonstrate a recurrent stenotic lesion or cause of
> his symptoms.

(Tr. at 50-51 (citing Tr. 470-77).)  In other words, Dr.

Daubert's examination and test results provided clear medical

evidence of continuing degenerative disc disease, which prompted

that impairment's classification as "severe" at step two of the

sequential analysis.  However, neither Dr. Daubert nor any other

medical professional of record found any medical basis for

Plaintiff's complaints of severe, left-sided back and leg pain.

In fact, Plaintiff's CT and myelogram results showed primarily

right-sided changes.  In addition, Plaintiff's lack of insurance

prevented him from pursuing the pain control options recommended

by Dr. Daubert.  Therefore, his condition remained largely

untreated at the time of the hearing.  (Id.)  These factors,

along with the absence of any evidence supporting Plaintiff's

pain allegations, demonstrate that the ALJ's credibility

determination was supported by substantial evidence.

### (3)  Anxiety

Finally, Plaintiff challenges the ALJ's finding that

anxiety attacks do not prevent him from performing sedentary

work.  Specifically, the ALJ found that "[t]here is insufficient

evidence to show that the claimant suffers from severe anxiety.

He has not sought mental health treatment.  He has not seen a

psycholog[ist] or psychiatrist.  He is taking no medications for anxiety."  (Tr. at 54.)  This explanation clearly encompasses the factors set out in Craig, 76 F.3d at 595, and 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3).  Plaintiff offers no evidence to the contrary nor provides any explanation of how his alleged anxiety would prevent him from performing sedentary work.  As such, substantial evidence supports the ALJ's credibility determination regarding anxiety.

### B.   Treating Physician's Opinion

Plaintiff next argues that the ALJ erred in "essentially disregard[ing]" the opinion of Dr. Taghizadeh.  (Pl.'s Br. at 7.)  In particular, Plaintiff contends that the ALJ failed to properly apply 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2), better known as the "treating physician rule."[4] The treating physician rule generally requires an ALJ to give controlling weight to the opinion of a treating source as to the nature and severity of a claimant's impairment, based on the ability of treating sources to

> [P]rovide a detailed, longitudinal picture of [the claimant's] medical impairment(s) [which] may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone

---

[4]  These provisions were previously codified at 20 C.F.R. §§ 404.1527(d) and 416.927(d).

> or from reports of individual examinations, such as
> consultative examinations or brief hospitalizations.

20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2).  However, the

rule also recognizes that the length of the treatment

relationship and the nature and extent of each treatment

relationship appreciably tempers the weight an ALJ affords it.

20 C.F.R. §§ 404.1527(c)(2)(i), (ii) and 416.927(c)(2)(i), (ii).

As subsections (c)(2) through (c)(4) of the rule describe in

great detail, a treating source's opinion, like all medical

opinions, must be both well-supported by medical signs and

laboratory findings and consistent with the other substantial

evidence in the case record.  20 C.F.R. §§ 404.1527(c)(2)-(4)

and 416.927(c)(2)-(4).  "[I]f a physician's opinion is not

supported by clinical evidence or if it is inconsistent with

other substantial evidence, it should be accorded significantly

less weight."  Craig, 76 F.3d at 590; accord Mastro v. Apfel,

270 F.3d 171, 178 (4th Cir. 2001); see also Social Security

Ruling 96-2p, Titles II and XVI: Giving Controlling Weight to

Treating Source Medical Opinions, 1996 WL 374188 ("SSR 96-2p").[5]

Moreover, opinions by physicians regarding the ultimate issue of whether a plaintiff is disabled within the meaning of the Social Security Act are never accorded controlling weight because the decision on that issue is reserved for the Commissioner alone. 20 C.F.R. §§ 404.1527(d) and 416.927(d)(1).

In the present case, Dr. Taghizadeh, along with physician's assistant Daniel L. Schwartz,

[R]eported on February 20, 2009 that the claimant continues to have exertional dyspnea and fatigue with minimal activities (even light activities around the home). Examination revealed the claimant to have normal breath sounds. His heart had a regular rate and rhythm without murmurs, clicks, S3, S4, or rubs. There were distant heart sounds. He had mild lower extremity edema. Musculoskeletal examination showed positive lumbosacral tenderness with limited flexion of the back (range of motion limited). He had radiation of discomfort to the left lower extremity. The claimant was noted to have mildly flat mood and affect. The assessment was: severe ischemic cardiomyopathy; AICD in situ; limited activities of daily living due to poor cardiac output; ED; diabetes mellitus type II;

_____

[5] Craig addressed when "persuasive contradictory evidence" would permit the ALJ to disregard the opinion of a claimant's treating physician from being given "great weight." Craig, 76 F.3d at 590. Plaintiff asserts that the ALJ erred by not giving the opinion of Dr. Taghizadeh and physician's assistant David L. Schwartz "appropriate weight" (Pl.'s Br. (Doc. 13) at 1, 7), which Plaintiff describes as "great weight" and "can only be disregarded if there is persuasive contradictory evidence." (Id. at 7 (citing Oppenheim v. Finch, 495 F.2d 396 (4th Cir. 1974)). Thus, Craig applies directly to Plaintiff's "appropriate weight" argument.

> hyperlipidemia; [and] ruptured disc L4-L5 with residual
> limitation of function.

(Tr. at 54-55 (citing Tr. at 455-56).)

Based on these findings, Dr. Taghizadeh and Mr. Schwartz opined that Plaintiff "has significant disability due to severe, advanced cardiac disease and decreased cardiac output at a young age.  His other co-morbid conditions of diabetes and low back pain with sciatica further this disability."  (Tr. at 456.) They further "anticipated that [Plaintiff] will not be able to have gainful employment throughout the remainder of his

lifetime," and "encouraged [him] to seek permanent disability."

(<u>Id.</u>)[6]

In reviewing this opinion evidence, the ALJ found that "[t]he above report . . . was clearly prepared with the claimant's disability claim in mind as employability and disability are themes." (Tr. at 55.) The decision then recounted the opinions of two state agency medical consultants

---

[6] The fact that Dr. Taghizadeh encouraged Plaintiff "to seek permanent disability" is not a medical opinion that Plaintiff is permanently disabled. Dr. Taghizadeh's opinion is a medical opinion which appears to arise from the statement that Plaintiff will "not be able to have gainful employment throughout the remainder of his lifetime," implicitly addressing in part whether Plaintiff can "<u>hold</u> whatever job he finds for a significant period of time." <u>Singletary v. Bowen</u>, 798 F.2d 818, 822 (5th Cir. 1986).

The opinion of Dr. Taghizadeh specifically references "co-morbid conditions of diabetes and low back pain with sciatic further[ing] this disability." (Tr. at 456.) The ALJ found no medical basis for left-sided back and leg pain, and that Plaintiff's "statements concerning the intensity, persistence and limiting effects" of his symptoms were not credible to the extent they were inconsistent with the RFC. Furthermore, the ALJ found the diabetes was controlled by oral agents and diet and that Plaintiff had not developed complications. Because the "co-morbid conditions" were analyzed by the ALJ, those findings at least implicitly inform the ALJ's ultimate explanation of the treating physician's opinion.

When viewed in the light of all the relevant findings, the ALJ's statement demonstrates that the ALJ considered Dr. Taghizadeh's opinion, adopted the majority of the medical findings, and limited the extent of the disability portion of the opinion consistently with the opinion and other findings. While the ALJ's explanation was not as extensive as it might have been, it is appropriate, as explained further herein.

who found that Plaintiff retained the ability to perform medium work.  It also highlighted evidence the latter examiners relied upon in making this determination, including Plaintiff's relatively good results during treadmill testing, his improved left ventricular ejection fraction as of September 2006, and his lack of edema, normal EKG, and denial of shortness of breath or chest pain at that time.  Accordingly, the ALJ concluded that Dr. Taghizadeh's "report does not take away from the preponderance of the evidence which does not rule out sedentary work."  (Id.)

Plaintiff now challenges the ALJ's treatment of Dr. Taghizadeh's opinion on two grounds.  First, he contends that the decision "was not 'sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion.'"  (Pl.'s Br. (Doc. 13) at 7 (citing SSR 96-2p).)  Second, he challenges the ALJ's reasons for discrediting Dr. Taghizadeh's report, arguing that "there is absolutely no evidence on record, and certainly not substantial evidence, contradicting the opinion of Dr. Taghizadeh."  (Id.) Both of Plaintiff's contentions fail.

Plaintiff is correct that, where an ALJ declines to assign controlling or great weight to a medical opinion, regardless of

whether the source is treating or non-treating, he must

"'explain in the decision the weight given' thereto and 'give

good reasons in [his] . . . decision for the weight.'"  Chirico

v. Astrue, Civil No. 3:10CV689, 2011 WL 6371315, at *5 (E.D. Va.

Nov. 21, 2011) (quoting 20 C.F.R. § 416.927(f)(2)(ii);

416.927(d)(2).)  "This requires the ALJ to provide sufficient

explanation for 'meaningful review' by the courts."  Thomas v.

Comm'r of Soc. Sec., No. Civ. WDQ-10-3070, 2012 WL 670522, at *7

(D. Md. Feb. 27, 2012) (unpublished) (citing Blakely v. Comm'r

of Soc. Sec., 581 F.3d 399, 409 (6th Cir. 2009); Chandler v.

Comm'r of Soc. Sec., 667 F.3d 356, 362 (3d Cir. 2011)).

However, even "implicit assignments of weight can support

meaningful review" so long as the ALJ's opinion "make[s] clear

that [he] 'recognized and evaluated the treating relationships'

of medical sources."  Thomas, 2012 WL 670522, at *7 (citations

omitted).  It is clear from the record that the ALJ gave "lesser

weight" to the opinion as to whether Plaintiff could perform

sedentary work.  (Tr. at 55.)  In so doing, the ALJ explained

the reasons by reference to contrary clinical evidence and other

substantive evidence, including Plaintiff's own statements and

medical records, both directly from the medical reports and from

two State agency medical consultants and the underlying records on which they relied, as discussed below. (Tr. at 52-55.)

In the present case, Dr. Taghizadeh's opinion that Plaintiff is permanently disabled by his impairments was not, and could not be, accorded controlling weight because the decision on that issue is reserved for the Commissioner alone. 20 C.F.R. §§ 404.1527(d) and 416.927(d)(1). Therefore, the only remaining question is whether the ALJ made clear that he "recognized and evaluated" Dr. Taghizadeh's underlying diagnoses appropriately. Significantly, the two other physicians to offer medical opinions in this case both found Plaintiff capable of medium exertional work, rather than the sedentary work assessed in the RFC. This fact alone demonstrates that the ALJ recognized the severity of Plaintiff's impairments, as described by Dr. Taghizadeh, and dramatically scaled back Plaintiff's RFC in an effort to better represent Plaintiff's abilities. In fact, the ALJ explicitly stated that Plaintiff's "significant heart problem . . . limits him to sedentary exertional work." (Tr. at 53.) In making this finding, the ALJ also implicitly assigned significant, but not controlling, weight to Dr. Taghizadeh's cardiac assessments. He also implicitly

discredited Dr. Taghizadeh's opinion regarding Plaintiff's "co-morbid" conditions, diabetes and low back pain.[7]

Contrary to Plaintiff's assertion, the ALJ also recounted extensive medical records pertaining to Plaintiff's cardiac impairment which demonstrates that it was not as limiting as Dr. Taghizadeh opined. The record reveals that Plaintiff exercised regularly, primarily by walking, throughout most of the time period in question.[8] (Tr. at 23-25, 53-54, 384.) He reported only occasional chest pain and/or shortness of breath upon exertion (Tr. at 53-54, 324, 330, 348, 354, 384, 386), and even fewer instances of these symptoms at rest (Tr. at 20-21, 53-54, 354, 356). In fact, Plaintiff reported no problems with dyspnea and chest pain on a number of occasions, including during appointments with Dr. Taghizadeh (Tr. at 53-54, 324, 350, 359, 363, 386).

In addition, all of Plaintiff's medical records from the relevant period, including those from Dr. Taghizadeh, indicate that Plaintiff "has remained stable from [a] cardiovascular

_____

[7] Plaintiff does not challenge the ALJ's finding that his well-controlled diabetes did not qualify as a severe impairment, and the ALJ's credibility determination regarding Plaintiff's back pain is supported by substantial evidence, as explained in section A above.

[8] Plaintiff indicated that he stopped exercising regularly due to bad weather and back pain rather than cardiac symptoms.

standpoint," denoting that his condition, while chronic, was not deteriorating during that time. (Tr. at 348.) His ejection fractions consistently remained between 29 and 40%,[9] and he exhibited a high level of exercise tolerance upon exercise stress testing with no complaints of chest pain. (Tr. at 388, 406.) These findings are consistent with Plaintiff's own assertion that his cardiac symptoms alone do not preclude sedentary work. (Tr. at 20.)

Overall, the record clearly supports Dr. Taghizadeh's diagnosis of "severe, advanced cardiac disease and decreased cardiac output." (Tr. at 456.) However, given the stability of Plaintiff's condition throughout the alleged period of disability, the lack of support for Plaintiff's complaints of anxiety and back pain, and comprehensive treatment notes showing Plaintiff's continued ability to exercise and perform light daily activities despite fatigue, weakness, and occasional shortness of breath and chest pain, substantial evidence supports the ALJ's conclusion that Dr. Taghizadeh's report was

---

[9] Plaintiff refers to his ejection fraction of 29% as "Listing Level." (Pl.'s Br. (Doc. 13) at 5.) However, Plaintiff does not challenge the ALJ's finding that his heart condition failed to meet the other requirements of Listing 4.04. Notably, Plaintiff's result of 30 or below also fails to meet the SSA's 12-month duration requirement for disability.

unpersuasive to overcome a finding that Plaintiff could perform
sedentary work.

## III. <u>CONCLUSION</u>

For the aforementioned reasons, **IT IS ORDERED** that
Plaintiff's Motion for Judgment on the Pleadings (Doc. 12) is
**DENIED,** that Defendant's Motion for Judgment on the Pleadings
(Doc. 14) is **GRANTED,** and that this action is **DISMISSED WITH
PREJUDICE.** A judgment consistent with this Memorandum Opinion
and Order will be entered contemporaneously herewith.

This the 17th day of September, 2014.

_____
United States District Judge